UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JOHN P. McDANIEL, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE )<br>Commissioner of Social Security )<br>) | Case No. 1-10-cv-83<br>(MATTICE/CARTER) |

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 11) and defendant's Motion for Summary Judgment (Doc. 15).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff, born in December 1975, was 31 years old on the date of his application, and 33 years old on the date of the ALJ's decision (Tr. 24, 27, 99, 105). He had a ninth grade education, and past work as a machine operator, mechanic, appliance deliverer, service station attendant, sewing machine operator, collar closer, tire changer, and landscape laborer (Tr. 28-31, 109-15).

Claim for Benefits

Plaintiff filed an initial application for Disability Insurance Benefits which was denied at the reconsideration level in June 2004 (Tr. 65-67). Plaintiff did not appeal this denial. In January 2007, Plaintiff filed a second application for Disability Insurance Benefits and an application for Supplemental Security Income, alleging disability as of October 2006 (Tr. 14, 16). It appears from the record that Plaintiff initially alleged an onset date of July 2001 (Tr. 99, 105, 124, 163, 167). Plaintiff amended his alleged onset date to October 1, 2006 at the hearing because that was the date he switched from insulin medication to insulin shots (Tr. 29). Plaintiff's date last insured for purposes of his Disability Insurance Benefits claim was December 31, 2006 (Tr. 99, 163). His subsequent applications were denied initially and on reconsideration (Tr. 42-51, 53-58). In September 2009, Administrative Law Judge (ALJ) Richard W. Gordon held a hearing at which Plaintiff, represented by his attorney, appeared and testified (Tr. 25-40). In October 2009, the ALJ issued a decision denying Plaintiff's application (Tr. 14-24). The Appeals Council denied review of the ALJ's decision, leaving the decision of the ALJ as the final decision of the Commissioner (Tr. 1-3). 20 C.F.R. §§ 404.981, 416.1481. Plaintiff seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner

employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different

3

conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus, diabetic neuropathy, peripheral vascular disease and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work activity as defined in 20 CFR 404.1567(b) and 416.967(b), allowing for alternate sitting and standing, allowing for the performance of simply one and two step unskilled tasks, and performing no work activity involving moving machinery, unprotected heights, and requiring balancing.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 28, 1975 and was 30 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 414.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-24).

## Issues Raised

I. The ALJ did not grant proper evidentiary weight to the medical opinions of the Plaintiff's treating nurse practitioner.

II. The ALJ's finding of the Plaintiff's residual functional capacity was not supported by substantial evidence.

## Relevant Facts

### Medical Evidence

On February 2, 2006, Plaintiff had a physical examination at Meigs County Health Department (Tr. 378-80). Plaintiff complained of loss of sensation in his feet and he was diagnosed with diabetes, hypertension, hypercholesterolemia, GERD, athlete's foot (tinea pedis),

and a history of depression (Tr. 380). On February 23, 2006, Plaintiff underwent blood testing which showed a Hemoglobin (Hb) level of 17.3,[1] and a Hemoglobin A1c (HbA1c) level of 7.3[2] (Tr. 368).[3]

On February 27, 2006, Plaintiff followed-up with Larry Crisp, a nurse practitioner (Tr. 365). Mr. Crisp noted that Plaintiff had peripheral neuropathy, GERD and depression (Tr. 365). Plaintiff began seeing Mr. Crisp on a fairly regular basis (Tr. 362-64).

On August 30, 2006, Plaintiff was seen in the emergency room because he was concerned

---

[1] "Serum hemoglobin is a test that measures the level of free hemoglobin in the liquid part of the blood (the serum). Free hemoglobin is the hemoglobin outside of the red blood cells. Most of the hemoglobin is found inside the red blood cells, not in the serum." MedlinePlus, *Serum hemoglobin*, Linda J. Vorvick, MD, James R. Mason, MD, David Zieve, MD (N.I.H. updated March 31, 2010) (http://www.nlm.nih.gov/medlineplus/ency/article/003677.htm) (last accessed 10/31/2010). A normal range for males is between 14.0–17.5 g/dL. *Id.* (See Defendant's brief, Doc. 16, p. 3).

[2] HbA1c, also referred to as glycated hemoglobin, is an important blood test used to determine how well an individual's diabetes is being controlled. *See* WebMD: *The Hemoglobin A1c (HbA1c) Test for Diabetes*, Reviewed by John A. Seibel, MD on March 08, 2009 (http://diabetes.webmd.com/guide/glycated-hemoglobin-test-hba1c) (last accessed 10/31/2010) (citing American Diabetes Association: *"A1C Test."* Droumaguet, C., Diabetes Care, 2006, 29:1619; Steffes, M., Clin Chem, 2005, 51:1569; Selvin, E., Diabetes Care, 2006; 29:877). HbA1c results when sugar builds up in the blood and combines with hemoglobin. *Id. (Defendant's Brief, Doc 16, p. 3).*

> For people without diabetes, the normal range for the hemoglobin A1c test is between 4% and 6%. Because studies have repeatedly shown that out-of-control diabetes results in complications from the disease, the goal for people with diabetes is an hemoglobin A1c less than 7%. The higher the hemoglobin A1c, the higher the risks of developing complications related to diabetes.

*Id.* (Defendant's Brief, Doc 16, p. 3).

[3] Plaintiff asserts that, in February 2006, his Hemoglobin A1c level was 17.3. *Plaintiff's Brief* at 368. Plaintiff appears to have cited to his Hemoglobin level, which was 17.3, while his Hemoglobin A1c level was 7.3 (Tr. 368).

about his blood sugars (Tr. 215-18). He reported that his blood sugar level was 450 earlier in the day, however, testing showed levels between 242 and 266 (Tr. 216, 218). He was given a shot of insulin and discharged in stable condition after several hours (Tr. 215, 357).

On September 20, 2006, Mr. Crisp noted that Plaintiff's blood sugars were running high (Tr. 354). Mr. Crisp also noted, however, that Plaintiff had not been taking his insulin after dinner (Tr. 354).

On October 2, 2006, testing showed that Plaintiff's HbA1c level was 11.0 (Tr. 350). Plaintiff reported pain radiating to his feet, and tingling and burning in his right foot (Tr. 348). On November 27, 2006, Plaintiff reported that his sugars were "doing a lot better" (Tr. 339). Follow-up testing showed that his HbA1c level had come down to 9.4 (Tr. 338).

In February 2007, Plaintiff reported continued peripheral neuropathy (Tr. 333). In March 2007, he was seen only for complaints of flu-like symptoms, feeling achy all over and problems sleeping (Tr. 330).

On April 2, 2007, Plaintiff completed a Function Report. He reported that he mowed his yard using a riding mower, went outside every other day, shopped for groceries and clothes for periods of about 30 minutes, took his children to and from school, helped his children with their homework, and bathed his children and got them ready for bed. He reported he could not sit or stand for long periods of time and could not use his hands as much as he used to (Tr. 132-136).

On April 3, 2007, Plaintiff underwent a consultative examination with Dr. Edward Johnson (Tr. 239-43). Plaintiff told Dr. Johnson that he experienced intermittent burning and stinging in his hands, legs, and feet (Tr. 240). Plaintiff stated that his symptoms were worse with prolonged sitting and standing, but resolved somewhat when he moved around (Tr. 240). On

7

examination, Dr. Johnson observed that Plaintiff had decreased sensation in his lower legs and feet, but a full range of motion in all joints, full grip strength, intact reflexes and strength, a normal gait, and was able to get on and off the examination table independently (Tr. 241-42). Dr. Johnson opined that Plaintiff retained "the ability to occasionally lift and carry up to 50 pounds, frequently 25-40 pounds; sit, stand or walk for up to 6 hours of a usual day with appropriate breaks and changes of position" (Tr. 242).

On April 9, 2007, Mr. Crisp reviewed Plaintiff's recent test results, which showed Plaintiff's Hb level was 16.7 (in the normal range). No HbA1c result was shown (Tr. 329). Mr. Crisp noted that the results were "good" (Tr. 329).

On May 28, 2007, state agency reviewing physician Dr. Reeta Misra opined that Plaintiff could perform medium work[4] (Tr. 267, 273). Dr. Misra noted that Plaintiff's hypertension was controlled and that, although the evidence showed neuropathy, his gait was normal (Tr. 271, 273).

In July 2007, Plaintiff told Mr. Crisp that his blood sugars were well controlled (Tr. 324), and testing in August 2007 showed his HbA1c level was at 6.5, which Mr. Crisp noted was "good" (Tr. 321-22). Mr. Crisp also noted that Plaintiff needed to watch fatty, starchy, fried foods (Tr. 321-22). In November 2007, testing again showed that Plaintiff's HbA1c level was 6.5, which Mr. Crisp again characterized as "good" (Tr. 317).

On March 7, 2008, state agency reviewing physician Dr. Marvin Cohn opined that Plaintiff could perform medium work, with no concentrated exposure to vibration (Tr. 275, 278,

---

[4] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

281). Dr. Cohn noted that Plaintiff's hypertension was controlled, and that, although the evidence showed neuropathy, his gait was normal (Tr. 281).

On April 28, 2008, Mr. Crisp noted that Plaintiff's diabetes was controlled (Tr. 308). That same day, Mr. Crisp completed a diabetes questionnaire in which he indicated that Plaintiff experienced significant peripheral neuropathy, but that his motor function was intact (Tr. 400). Mr. Crisp indicated that Plaintiff did not have neuropathy characterized by significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (Tr. 400). Mr. Crisp opined that Plaintiff could stand for two hours, sit for three to four hours, and walk for one hour; lift 21 to 50 pounds on a regular basis; and lift over 50 pounds occasionally (Tr. 401). Mr. Crisp concluded that Plaintiff would be unable to reliably work full time (Tr. 401). Mr. Crisp also wrote an accompanying letter, in which he indicated that Plaintiff's medical conditions adversely affected his ability to work (Tr. 403).

In May 2008, Plaintiff reported abdominal pain, upset stomach and that it was difficult to walk (Tr. 305). In July 2008, Plaintiff claimed that knee swelling made it difficult to walk (Tr. 301).

Testing in February 2009 showed that Plaintiff's HbA1c level remained at 6.5, which Mr. Crisp again noted was "good" (Tr. 293). In May 2009, Plaintiff reported right leg pain (Tr. 393). Testing, however, showed that Plaintiff's HbA1c level was 6.6 (Tr. 397). In June 2009, Plaintiff was treated for a swollen nose (Tr. 387), and in July 2009, he was seen for complaints of lower jaw pain related to bad teeth (Tr. 383).

Hearing Testimony

A.  Plaintiff's Testimony

Plaintiff testified that he experienced constant pain in his legs, feet, and hands due to diabetic neuropathy (Tr. 31). He testified to the need to elevate his feet and legs two to three hours per day, and estimated that he could sit for ten minutes and stand for fifteen minutes (Tr. 32). He stated he had problems balancing and falling down due to numbness in his legs, and dropped objects because of cramping and numbness in his hands (Tr. 33). He also testified he was unable to lift or carry any weight because he was afraid of dropping it (Tr. 33-34). Plaintiff testified that he experienced diarrhea three to four times per day as a side effect of his insulin (Tr. 34) and drove his children to school three to four times per week (Tr. 35).

B.  Vocational Expert's Testimony

Jane Colvin-Roberson testified as a neutral vocational expert at the administrative hearing (Tr. 30-31, 37-39). The ALJ asked the vocational expert to consider a hypothetical individual with the vocational profile as Plaintiff who could do light work,[5] with the following additional limitations:

- an option to alternate between sitting and standing;

- no work around unprotected heights, hazardous machinery, or balancing; and

- only one or two step tasks

---

[5] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Even if the weight lifted is very little, a job is in the light "category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Generally, it requires intermittent sitting, occasional stooping, and six hours of standing or walking in an eight-hour day. SSR 83-10.

(Tr. 473).

In response, the vocational expert testified that the individual could not perform Plaintiff's past relevant work (Tr. 37). The vocational expert, however, identified other work that the hypothetical individual could perform, including positions as a cashier and a ticket taker (Tr. 37-38).

ALJ's Decision

The ALJ found Plaintiff had the following severe impairments: diabetes mellitus, diabetic neuropathy, peripheral vascular disease, and depressive disorder (Tr. 16). The ALJ analyzed the evidence and found Plaintiff did not meet or medically equal any listed impairment (Tr. 16-19). The ALJ found Plaintiff retained the residual functional capacity to perform unskilled light work with the following additional restrictions:

- an option to alternate between sitting and standing;

- no work around unprotected heights, hazardous machinery, or balancing; and

- only one or two step tasks

(Tr. 19, 22).

The ALJ considered Plaintiff's allegations, but found he was not credible to the extent his allegations were inconsistent with the residual functional capacity finding (Tr. 19-22). The ALJ found that, given his residual functional capacity, Plaintiff could not perform his past work (Tr. 22-23). But, based on the testimony of the vocational expert, the ALJ found that Plaintiff was able to perform other work existing in significant numbers in the national economy, including the representative positions of cashier and ticket taker (Tr. 23-24).

Analysis

Plaintiff argues the ALJ erred: 1) by not granting proper weight to the April 2008 opinion of Mr. Crisp and 2) in evaluating Plaintiff's Residual Functional Capacity, which he urges was not supported by substantial evidence. I do not agree.  I conclude the ALJ reasonably analyzed the evidence and explained his reasons for declining to accept the more restrictive and disabling assessment of Mr. Crisp (Tr. 16-22).  The ALJ evaluated Plaintiff's credibility, and based on his review of the entire record, appropriately determined that Plaintiff retained the residual functional capacity to perform a range of light work (Tr. 19-22).  Finally, the ALJ  relied on the testimony of the vocational expert in determining that Plaintiff could perform other work that existed in substantial numbers in the national economy (Tr. 23-24).  For those reasons, and those set forth below, I conclude the ALJ's decision is supported by substantial evidence on the record as a whole.

## I.     The ALJ'S Evaluation of the Opinion of Mr. Crisp

Plaintiff argues that the ALJ erred by not according Mr. Crisp's April 2008 opinion greater evidentiary weight (*Plaintiff's Memorandum, Doc.* 12,  at 4-8).  As the Commissioner argues,  to the extent Plaintiff suggests  the ALJ should have accorded controlling weight to Mr. Crisp's opinion,  Mr. Crisp as a nurse practitioner was not an "acceptable medical source" within the meaning of the regulations.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Therefore, his opinion was not a medical opinion that could be given controlling weight.  20 C.F.R. 404.1527(a)(2), (d)(2); 416.927(a)(2), (d)(2); SSR 96-2p.  Even if it could have been procedurally entitled to controlling weight, the ALJ had sufficient reasons to not give it controlling weight.  I conclude the ALJ appropriately considered Mr. Crisp's opinion (Tr. 21); SSR 03-06p.

Plaintiff contends the medical evidence supports Mr. Crisp's assessment of his functional capacity – specifically that his HbA1c levels were as high as 17.3, and his blood sugar levels as high as 450 (*Plaintiff's Brief, Doc. 12,* at 6). As the Commissioner notes, and as set out in the review of medical evidence above, Plaintiff's HbA1c level was never higher than 11 in October 2006, and in fact steadily declined to consistent levels of around 6.5 (Tr. 293, 322, 338, 397). Plaintiff's assertion that his HbA1c was 17.3 appears to be an error. Further, Plaintiff's assertion that his blood sugars were as high as 450 is based solely on his personal report (Tr. 216). On the day that he reported a level of 450, testing showed levels of 242 and 266 (Tr. 218). There were several references in the records of Mr. Crisp that Plaintiff's blood sugars were well controlled and several references that his HbA1c levels were "good." I conclude there is substantial evidence in the record to support the ALJ's conclusion that the medical record showed that Plaintiff's diabetes was stabilized when he complied with his diet and medication (Tr. 20).

In assessing Mr. Crisp's opinion, the ALJ noted the contrast between Mr. Crisp's indication that Plaintiff had significant limitations in his ability to sit, stand, or walk and his indication that Plaintiff's motor function was intact (Tr. 21, 400-01). Next, the ALJ pointed to the opinion of Dr. Johnson, the consulting physician, who found that Plaintiff exhibited a full range of motion in all joints and had a normal gait (Tr. 21, 241-42). Plaintiff argues Dr. Johnson's findings do not support the ALJ's RFC assessment because his findings confirmed peripheral neuropathy and Dr. Johnson restricted Plaintiff from prolonged sitting, standing, and walking to only six hours out of a regular work day (Plaintiff's Memorandum, Doc. 12 at pp. 11, 12). The Commissioner responds that it is a reasonable reading of Dr. Johnson's opinion that he found Plaintiff could only perform the combination of sitting, standing, and walking up to six

hours in an eight-hour day. In light of the fact that his opinion recites a "regular work day," I conclude this is a reasonable reading. Further, as the Commissioner notes, that is how both Dr. Misra and Dr. Cohn interpreted Dr. Johnson's assessment. Contrary to Plaintiff's assertion, Dr. Johnson's consultative examination does not support the opinion of Mr. Crisp. Even though he finds the existence of peripheral neuropathy, that does not automatically mean Plaintiff is disabled. The presence of the condition is not sufficient to establish disability and the ALJ had other evidence before him which led him to conclude there was some work which Plaintiff could still perform in spite of that limitation.

The fact that Plaintiff was diagnosed with diabetes and diabetic neuropathy is not proof that he is disabled. The diagnosis of a condition does not automatically entitle a claimant to disability benefits. *See*, *e.g.*, *Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x. 801, 806 (6th Cir. Jan. 15, 2008) (diagnosis did not entitle claimant to disability benefits, particularly where there was substantial evidence to support the ALJ's finding that the condition was either improving or stable). Rather, Plaintiff was required to demonstrate disabling limitations resulting from his impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability."). I conclude the ALJ considered all of the relevant evidence in the record and adequately explained his reasoning for finding that Plaintiff did not have disabling limitations resulting from his severe impairments.

The regulations require that the ALJ look to the record as a whole to decide whether substantial evidence is inconsistent with a treating source's assessment. *See* 20 C.F.R. §§

404.1527(d)(2), (4); 416.927(d)(2)(4). In this case, the ALJ looked not only to the medical evidence, but also to Plaintiff's treatment and his reported activities (Tr. 16-22). The record evidence, considered in its entirety, supports the ALJ's physical residual functional capacity assessment. Deference must be accorded to the ALJ's reasoned determination that Mr. Crisp's opinion was inconsistent with the other evidence of record. *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008).

## II. The ALJ'S Evaluation of Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred in rejecting his subjective allegations. *Plaintiff's Memorandum, Doc. 12, at 10-11).* Plaintiff argues that the ALJ erred in evaluating the objective medical evidence. I conclude the ALJ appropriately considered the objective medical evidence and other evidence, such as his daily activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7. As discussed above, Plaintiff's contention that the ALJ misinterpreted the medical evidence is without merit. The evidence shows Plaintiff's diabetes was relatively stable with only a spike in HbA1c levels in the Fall of 2006 (Tr. 293, 322, 368, 397). With respect to Plaintiff's activities of daily living, the ALJ observed that Plaintiff took his children to school and assisted them with their daily routine, went out to eat, and took care of routine household chores (Tr. 20, 132-35). Plaintiff also reported that he mowed his yard using a riding mower, went outside every other day, and shopped for groceries and clothes (Tr. 132-35). Plaintiff's activities as reflected in the record are consistent with the ALJ's findings. The ALJ considered a range of factors under the appropriate regulatory framework, and gave good reasons for finding that Plaintiff's subjective complaints of total disability were not fully credible. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p*; Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (citation omitted).

Plaintiff has a serious Diabetic condition and certainly there is evidence in the record, including Plaintiff's own testimony and the opinion of Mr. Crisp which if accepted would lead to the conclusion of disability. However, there was also evidence on the other side, the relatively stable blood level reading during the relevant time period, the reported daily activity of Plaintiff, the opinion of Dr. Johnson, and the opinions of the two State Agency Physicians. On balance, I conclude there was substantial evidence in the record to support the ALJ's evaluation.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 15) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 11) be DENIED.[6]

                                                          s/William B. Mitchell Carter
                                                          UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).